# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BERTHA COLBERT,** ) | **NO. EDCV 16-2613-KS** |
| **Plaintiff,** ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| **NANCY A. BERRYHILL,**[1] **Acting** ) | |
| **Commissioner of Social Security,** ) | |
| **Defendant.** ) | |
| _____ ) | |

## INTRODUCTION

Bertha Colbert ("Plaintiff") filed a Complaint on December 22, 2016, seeking review of the denial of her application for Supplemental Security Income ("SSI"). (Dkt. No. 1.) On February 2, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 13.) On January 9, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No 30.) Plaintiff seeks an order reversing the Commissioner's decision and remanding for further proceedings or an

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

1

immediate award of benefits. (Joint Stip. at 9, 16, 19, 25.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 14, 24, 25-26.) The matter is now ready for decision without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On October 29, 2013, Plaintiff filed an application for SSI under Title XVI. (Administrative Record ("AR") 83, 120.) Plaintiff alleged disability beginning March 25, 2011, due to right hand finger swelling, right shoulder tendonitis, depression, anxiety, neck injury, and neck nerve damage. (AR 83.) Plaintiff later alleged additional impairments of severe migraines, glaucoma in eyes, high blood pressure, and borderline diabetes. (AR 293.) The Commissioner denied Plaintiff's application initially on March 13, 2014 and upon reconsideration on July 10, 2014. (AR 120-24, 130-36.) Plaintiff then requested a hearing. (AR 137-39). Administrative Law Judge Marti Kirby ("ALJ") held a hearing on April 8, 2016. (AR 53-82.) Plaintiff, represented by counsel, testified before the ALJ, as did Vocational Expert ("VE") Troy Scott. (*Id.*) On June 28, 2016, the ALJ issued an unfavorable decision, denying Plaintiff's application for benefits. (AR 34-46.) On October 21, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

**SUMMARY OF ADMINISTRATIVE DECISION**

Applying the five step sequential evaluation process, 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that Plaintiff had engaged in substantial gainful activity ("SGA") from her alleged onset date of March 25, 2011 through March 31, 2015. (AR 34, 36.) However, the ALJ found Plaintiff had not engaged in SGA from April 1, 2015 through the date of the decision on June 28, 2016, a period of more than twelve consecutive months, so the ALJ proceeded to step two for this later period. (AR 36, 46.) At step two, the ALJ found Plaintiff had the following severe impairments:

> "[D]isc protrusion; migraine headaches; hypertension; borderline personality disorder; adjustment disorder; anxiety disorder; and history of arthroscopic right shoulder decompression and distal clavicle resection (20 C.F.R. 416.920(c))."

(AR 36.) The ALJ found Plaintiff's cervical radiculopathy, glaucoma, and right arm tendonitis syndrome were non-severe. (AR 37.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (AR 37.)

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> "[Plaintiff] can stand, walk, and sit for six hours in an eight hour workday; she must have brief position changes [while] sitting after approximately one hour, the brief position change would last one to five minutes, and she could remain on task during that time; she can frequently balance, but all other postural activities could be performed occasionally; she cannot climb ladders, ropes, or scaffolds; she cannot work at unprotected heights, around moving machinery, or around other hazards; she is limited to occasional, nonintense interaction with the general public; she can concentrate for up to two hours at a time, but is limited to unskilled tasks, mainly due to chronic pain, side effects of medication, and possibly psychological symptoms; she is limited to occasional overhead reaching with the dominant right upper extremity, but she cannot lift overhead with that extremity; she is precluded from repetitive or constant movement of the head or neck; she is precluded from static positioning of the head or neck for more than one hour at a time; and she is limited to frequent fine manipulation with the dominant right hand, as well as no forceful gripping or grasping."

(AR 38.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. (AR 45.) At step five, the ALJ found, based on the VE's testimony, that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (AR 45.) Consequently, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 29, 2013, the date the application was filed, through the date of the ALJ's decision. (AR 46.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review "the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)(citations omitted).

//
//

The Court must uphold the Commissioner's decision when "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, meaning error that is "inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISPUTED ISSUES

The parties raise two issues. The first is whether "the ALJ met his burden of proof at step five of the sequential evaluation process." (Joint Stip. at 5.) The second is whether "the ALJ properly evaluated Dr. Kauss and Dr. Ross's psychiatric opinions." (*Id.*)

## DISCUSSION

### I. The ALJ Met His Burden of Proof at Step Five And Properly Found There Were a Significant Numbers of Jobs in the National Economy Plaintiff Can Perform.

Plaintiff argues that the ALJ failed to identify a significant number of jobs Plaintiff could perform. (Joint Stip. at 8.) Plaintiff contends this error stemmed from relying on the VE's testimony concerning job numbers which Plaintiff has shown to be overstated through evidence of job numbers Plaintiff's counsel obtained from Job Browser Pro. (Joint Stip. at 6-8.) Plaintiff also contends that there is a conflict between the VE's testimony, which relied on the Dictionary of Occupation Titles ("DOT") and the Occupational Outlook Handbook

("OOH") regarding the skill level of two of the occupations identified by the VE as jobs Plaintiff could perform. (Joint Stip. at 7 n. 3.)

**A. Plaintiff Preserved the Issue of Job Numbers By Raising It Before the Appeals Council Who Made the Evidence Part of the Administrative Record.**

As a threshold matter, Defendant argues Plaintiff waived the issue of job numbers by failing to question the VE about his testimony regarding job numbers and failing to raise the issue before the ALJ. (Joint Stip. at 10.) Defendant contends raising the issue before the Appeals Council was not sufficient to preserve the issue on appeal to the district court. (Joint Stip. at 10.)

The Ninth Circuit requires Plaintiffs who are represented by counsel to raise "all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). The Social Security Act provides the reviewing court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). If the Appeals Council "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of SSA*, 682, F.3d 1157, 1163 (9th Cir. 2012); *accord Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007).

Here, Plaintiff failed to raise the issue of job numbers before the ALJ at the ALJ hearing, but did raise the issue to the Appeals Council. (Joint Stip. at 8, 10; AR 5, 77-81, 353-63.) Defendant relies on two Ninth Circuit cases, *Meanel*, 172 F.3d 1111 (9th Cir. 1999) and *Shaibi v. Berryhill*, 870 F.3d 874 (9th Cir. 2017)(pending rehearing), as support for the

argument that Plaintiff waived the issue of job numbers by failing to raise it before the ALJ. Both of these cases involve Plaintiffs who did not raise the issue of job numbers before either the ALJ or the Appeals Council. *Meanel*, 172 F.3d at 1115; *Shaibi*, 870 F.3d at 882. Plaintiff also notes in a footnote that if mandate issues on *Shaibi*, then failure to raise the issue before the Appeals Council waives this issue. (Joint Stip. at 8, n.4.) Based on the Court's review of the cited case law, the Court finds that both parties' arguments somewhat miss the mark.

Here, Plaintiff *did* raise the issue of the VE's job numbers before the Appeals Council and the Appeals Council considered the evidence submitted and made it part of the record. (AR 2, 5, 353-63.) The evidence is thus part of the administrative record and this Court must consider it. *Brewes*, 682, F.3d at 1163; *see Garrison*, 759 F.3d at 1009 (stating the Court must review the entire record).

### B. VE Testimony and ALJ Findings

At the hearing, the ALJ questioned the VE in relation to Plaintiff's past relevant work and present ability to work considering her impairments. (*See* AR 79.) The VE classified Plaintiff's past relevant work as clerk typist (DOT 203.362-010) and customer service representative supervisor (DOT 239.137-014). (AR 77.) The ALJ then posed a hypothetical which included numerous restrictions framed by the limitations of Plaintiff's RFC and her subjective symptom testimony, one of which was: "[t]he individual can concentrate for up to two hours at a time but would be limited to unskilled tasks. And that would be mainly due to chronic pain, side effects of medications, and possibly psychological symptoms." (AR 78.) Based on this hypothetical, the VE testified that an individual with the listed limitations would not be able to perform Plaintiff's past relevant work but could perform other work, including three specific occupations. (AR 79.) The first occupation that the VE provided was hand packager (DOT 559.687-074), which is unskilled and the VE testified that approximately 335,000 positions are available nationally. (AR 79.) The second occupation

the VE provided was electronics worker (DOT 726.687-010), an unskilled occupation with approximately 90,000 positions nationally according to the VE's testimony. (AR 79.) The third occupation provided was small product assembler (DOT 706.684-022), an unskilled occupation with, according to the VE's testimony, 70,000 positions nationally. (*Id.*) The ALJ asked the VE if his testimony regarding the positions was consistent with the DOT. (AR 80.) The VE confirmed that his testimony was consistent with the DOT. (AR 80.) Plaintiff's counsel had no questions for the VE. (AR 81.) Based on the VE's testimony, the ALJ found Plaintiff could perform other work that existed in significant numbers in the national economy. (AR 46.)

**C. Standard**

Under the Social Security Act, disability is found when a person with impairments is unable to perform past work or other work "which exists in the national economy" meaning "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B). The ALJ bears the burden of showing work exists in significant numbers in the national economy that Plaintiff can perform. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). An ALJ may properly rely on the testimony of a VE regarding job numbers in the national economy to make this showing. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017)(quoting *Bayliss*, 427 F.3d at 1218). An ALJ is required to ask on the record if the VE's testimony is consistent with the DOT and resolve any apparent conflicts between the VE's testimony and the DOT. *Buck*, 869 F.3d at 1051-52; Social Security Ruling ("SSR") 00-04p, 2000 SSR LEXIS 8, at *4, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

//
//

### D. Analysis

The ALJ properly relied on the VE's testimony regarding job numbers and so met his burden at step five of the evaluation process to show there were jobs in significant numbers in the national economy Plaintiff could perform. Relying on the testimony of a VE is an acceptable means of establishing job numbers. *Bayliss*, 427 F.3d at 1218; *see* 20 C.F.R. § 416.966(e). Plaintiff does not argue that the job numbers testified to by the VE in relation to the DOT were incorrect. Rather, Plaintiff relies on Job Browser Pro to support her contention that the VE's job numbers are overstated. (Joint Stip. at 6-8; AR 353-63.)

Job Browser Pro is not a source listed in 20 C.F.R. § 416.966(d) of which the Social Security Administration takes administrative notice. The data Plaintiff provides from Job Browser Pro is also not explained by a vocational expert, but instead is proffered and cited by Plaintiff's counsel in its raw form. Even if the data from Job Browser Pro in its raw form were considered substantial evidence — and the Court is not persuaded that it is— the data would only serve to show that the evidence can be interpreted in different ways. *Valenzuela v. Colvin*, No. CV 12-0754-MAN, 2013 U.S. Dist. LEXIS 73439 at *11 (C.D. Cal. 2013)(unpublished); *Leslie v. Colvin*, No. CV 15-0190-GJS, 2015 U.S. Dist. LEXIS 165233 at *7-8 (C.D. Cal. 2015)(unpublished).

Where the evidence is merely "susceptible to more than one rational interpretation," the Court must uphold the ALJ's finding. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). While the Court recognizes that the data could potentially show the VE overstated the job numbers, the evidence before the Court is not conclusive. As such, Plaintiff has failed to show the ALJ's reliance on the VE's testimony was improper or that the ALJ's finding on job numbers was not supported by substantial evidence in the record.

\\
\\

Plaintiff also argues it was legal error for the ALJ to rely on VE testimony that identified "an aggregate number of jobs in the nation rather than several regions in the country." (Joint Stip. at 8-9.) The statute requires that work exist in the "national economy" in "significant numbers" seen through either the region where Plaintiff lives or "several regions of the country." 42 U.S.C. § 1382c(a)(3)(B). If the number provided is a national number, the court reviews the number in the context of being distributed across several regions. *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012).

Here, the VE provided, and the ALJ found, there were three occupations Plaintiff could perform with an approximate total of 495,000 jobs nationally. (AR 79.) The Ninth Circuit has found 25,000 jobs nationally, or across several regions, to be significant. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014). Consequently, the ALJ properly relied on the VE's testimony, which stands as substantial evidence that there were jobs in significant numbers in the national economy Plaintiff could perform.

While the issue of job numbers and the data from Job Browser Pro was raised before the ALJ, the issue concerning a possible conflict between the VE's testimony and the OOH was not. (AR 353-63.) Both parties, however, made reference to *Shaibi v. Berryhill*, 870 F.3d 874 (9th Cir. 2017) (pending rehearing). *Shaibi* currently holds that while the ALJ is required to inquire *sua sponte* into whether there is a conflict between a VE's testimony and the DOT under SSR 00-04p, there is currently no similar requirement on the ALJ with respect to the County Business Patterns or OOH. 870 F.3d at 882.[2]

---

[2] On October 16, 2017, the Ninth Circuit ordered briefing on the issue of whether "20 C.F.R. § 404.1566(d) requires all listed data sources [which includes the OOH] to be treated in the same way as the Dictionary of Occupational Titles." *Shaibi*, 870 F.3d 874 (9th Cir. 2017), *reh'g granted en banc*, No. 15-16849(9th Cir. Oct. 16, 2017). 20 C.F.R. § 404.1566(d) applies to Disability Insurance Benefits under Title II and is the equivalent of 20 C.F.R. § 416.966(d) which applies to Supplemental Security Income under Title XVI which would be the relevant section in this case. If the Ninth Circuit revises its holding in *Shaibi* and finds that ALJs have a *sua sponte* duty to inquire if a VE's testimony is consistent with the OOH, then failure to raise this issue to the ALJ or Appeals Council would not serve as waiver of the issue. *See Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007).

Plaintiff has requested the Court take judicial notice of the OOH report for Production Workers, All Other, and the OOH Glossary. (Dkt. No. 29.) Defendant opposed this request. (Dkt. No. 31.) The Court recognizes that the Social Security Administration takes administrative notice of the OOH published by the Bureau of Labor Statistics (20 C.F.R. § 416.966(d)(5)) and it is a known publication which is noticeable under Federal Rule of Evidence 201, therefore, the Court grants Plaintiff's request that it take judicial notice of the OOH. Nevertheless, even with judicial notice of the OOH, Plaintiff still fails to show a reversible error on the issue of job numbers.

Plaintiff makes reference in a footnote to a possible conflict regarding the skill level of two occupations provided by the VE between the DOT and the OOH. (Joint Stip. at 7 n. 3.) The VE testified that Plaintiff could perform the work of electronics worker (DOT 726.687-010) and small products assembler (DOT 706.684-022), both of which the VE testified are considered unskilled with an SVP [Specific Vocational Preparation] of 2. (AR 79.) Plaintiff claims that these occupations fall under Occupational Employment Survey ("OES") group 51-9199 Production Workers, All Other. (Joint Stip. at 7.) Plaintiff contends that under the OOH, this OES group requires moderate-term on-the-job training which means it is a semi-skilled position. (Joint Stip. at 7.) Ostensibly, this would mean there is a conflict between the DOT and the OOH regarding the skill level required for these occupations. Plaintiff would be precluded from performing them if they are semi-skilled positions based on the ALJ's determination of Plaintiff's RFC which limits Plaintiff to unskilled work. (AR 38).

In reviewing the documents submitted to the Court in relation to Plaintiff's request for judicial notice, the Court finds the OOH report for Production Workers, All Other does state this occupation requires moderate-term on-the-job training. However, the Court could find no indication in the documents submitted that moderate-term on-the-job training means the occupation is semi-skilled. Assuming *arguendo* that moderate-term on-the-job training does mean the occupation is considered semi-skilled under the OOH and assuming *arguendo* the

Ninth Circuit revises *Shaibi* to hold that the ALJ has a *sua sponte* duty to inquire into conflicts between a VE's testimony and the OOH, Plaintiff still fails to show reversible error. Even if the Court were to find Plaintiff is incapable of performing the work of electronics worker and small products assembler, that does not change the ALJ's finding that Plaintiff can perform the work of hand packager. (*See* AR 79.) Plaintiff has not argued there was a potential conflict between the DOT and the OOH regarding the hand packager occupation. The VE testified the hand packager position has approximately 335,000 jobs in the national economy. (AR 79.) This is still a significant number of jobs in the national economy. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014)(holding 25,000 jobs nationally as significant). Thus, even if there is a possible conflict between the VE's testimony and the OOH regarding electronics worker and small products assembler, the ALJ's finding that Plaintiff could perform these occupations would only amount to harmless error.

Accordingly, the Court finds the ALJ met his burden at Step Five of the evaluation process to show that while Plaintiff cannot perform her previous work, other jobs exist in significant numbers in the national economy that Plaintiff can perform.

## II. The ALJ Did Not Err in Discounting the Medical Opinions of Dr. Kauss and Dr. Ross Regarding Plaintiff's Mental Impairments.

Plaintiff contends the ALJ erred in giving little weight to the opinions of Dr. Kauss and Dr. Ross, based on the fact Plaintiff was performing substantial gainful activity around the time they provided their medical opinions that she had severe mental limitations. (Joint Stip. at 18.) Defendant responds that the ALJ "properly accorded little weight to the opinions of doctors [Kauss] and [Ross] that Plaintiff had severe limitations in mental functioning that prevented her from working." (Joint Stip. at 20 (citing AR 43-44, 960-71).)
\\

### A. Dr. Kauss's Opinions

Dr. David Kauss performed an initial examination of Plaintiff in relation to her mental health on November 29, 2012. (AR 1009.) Based on that examination, he requested authorization for Plaintiff to receive individual psychotherapy treatment from Dr. Ross and psychotropic medication consultations with Dr. Levy. (AR 1009.) Dr. Kauss signed periodic status reports seeking continued authorization for Plaintiff's treatment with Dr. Ross and Dr. Levy from December 1, 2012 through January 2, 2014. (*See* AR 611-35.)

On June 9, 2014, Dr. Kauss provided a medical opinion regarding Plaintiff's mental impairment. (AR 960-65.) He indicated that Plaintiff was seen in individual therapy each week. (AR 960.) Dr. Kauss listed Plaintiff's mental impairments to include "depression, anxiety, insomnia, anger, poor focus [and] concentration, plus severe [and] chronic pain from industrial causation, all of which affect [patient's] ability to work." (AR 960 (emphasis in original).) Dr. Kauss listed Plaintiff's prognosis as "guarded, at best." (AR 960.) Dr. Kauss identified Plaintiff as unable to meet competitive standards in the following areas: maintain attention for two hour segment; respond appropriately to changes in a routine work setting; understand and remember detailed instructions; carry out detailed instructions; and deal with stress of semiskilled and skilled work. (AR 962-63.) He found Plaintiff to have no useful ability to function in the following areas: maintain regular attendance and be punctual within customary, usually strict tolerances; and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 962.) These findings were based primarily on severe pain, severe depression, and poor memory and concentration. (AR 963.) Dr. Kauss opined that Plaintiff's depression and anxiety exacerbated her experience of physical pain. (AR 963.) He found Plaintiff would be absent from work more than four days per month as a result of her impairments. (AR 964.) Dr. Kauss opined Plaintiff's impairments could be expected to last at least twelve months and Plaintiff was not a malingerer. (AR 964.)

Dr. Kauss also performed a psychological reevaluation of Plaintiff on February 12, 2015. (AR 1008-29.) Dr. Kauss found Plaintiff had mild to moderate impairment regarding activities of daily living, moderate to marked impairment relating to social functioning, moderate impairment relating to memory, concentration, persistence, and pace, and moderate to marked impairment regarding adaptation to stressful circumstances. (AR 1023-24.)

**B. Dr. Ross's Opinion**

Dr. Michael Ross answered a Mental Health Impairment Questionnaire in relation to Plaintiff on August 25, 2014. (AR 966-72.) He stated he treated Plaintiff for her mental health once a week starting December 20, 2012. (AR 966.) Dr. Ross listed his clinical findings regarding Plaintiff to include "depression, anxiety, insomnia, severe headaches, poor ability to focus or concentrate, SEVERE UNTREATED neck pain, and inability to work at this time." (AR 966 (emphasis in original).) He listed her prognosis as "guarded." (AR 966.) Dr. Ross identified Plaintiff as unable to meet competitive standards in the following areas: work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; deal with normal work stress; carry out detailed instructions; and set realistic goals or make plans independently of others. (AR 968-69.) He found Plaintiff to have no useful ability to function in the following areas: perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and deal with stress of semiskilled and skilled work. (AR 968-69.) Dr. Ross opined that Plaintiff's depression and stress exacerbated her experience of physical pain. (AR 969.) He found Plaintiff would be absent from work more than four days per month as a result of her impairments. (AR 971.) Dr. Ross also opined that Plaintiff's impairments could be expected to last at least twelve months and Plaintiff was not a malingerer. (AR 971.)

### C. The ALJ's Treatment of the Opinions of Dr. Kauss and Dr. Ross

The ALJ gave little weight to the opinions of Dr. Kauss and Dr. Ross, dated June 9, 2014 and August 25, 2014, respectively. (AR 43.) The ALJ gave these opinions little weight because he found that Plaintiff engaged in SGA and "the fact the [Plaintiff] worked extensively during this period undermined the significant functional limitations he assessed." (AR 43 (error in original).) The ALJ acknowledged that at the time Dr. Kauss and Dr. Ross gave their opinions, Plaintiff was not working, but noted that Plaintiff later returned to work on a full time basis. (AR 43.) Dr. Kauss provided another opinion in relation to an exam of Plaintiff on February 12, 2015, but the ALJ found this opinion undermined by Plaintiff's full time work schedule during that period. (AR 44.) In sum, the ALJ found Plaintiff's record of SGA inconsistent with the severity of the mental impairments these doctors ascribed to her.

The ALJ noted that Plaintiff had engaged in SGA from her alleged onset date of March 25, 2011 through March 31, 2015. (AR 34, 36.) This finding was based on Plaintiff's own testimony that "she stopped working in March 2015 and prior to that, she was employed on a full time basis, averaging 40 hours a week." (AR 36.) Plaintiff's testimony in response to questions related to this issue asked by the ALJ at the ALJ hearing was:

Q: When's the last date that you worked?
A: It was 2015 - - well, started December 2014 to March 2015.
Q: And were you working full-time during that time?
A: Yes.
Q: How many hours a week?
A: I was on, like, a nine-hour day and a regular day off. Like, it's called a 9/80.

(AR 58.) The ALJ's finding that Plaintiff engaged in SGA was also based on Plaintiff's earnings records which "showed significant earnings from the alleged onset date until the [Plaintiff] stopped working." (AR 36.)

**D. Standard**

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. 416.927.[3] Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Id.* If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id.*

Examining physician opinions too are given more weight than nonexamining physician opinions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the examining physician's opinion is not contradicted by another doctor, it too may be rejected only if the ALJ provides clear and convincing reasons supported by substantial evidence in the record. *Id.* If the examining physician's opinion is contradicted by another doctor, it may be rejected only if there are specific and legitimate reasons supported by substantial evidence in the record. *Id.* at 830-31.

---

[3] Effective March 27, 2017, the SSA revised its regulations directing the evaluation of medical opinion evidence, including 20 C.F.R §§ 404.1527, 416.927. But these revisions are not applicable or relevant to the analysis here relating to Plaintiff's October 29, 2013 application for SSI benefits.

16

An ALJ can satisfy the substantial and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). For the reasons discussed below, the ALJ satisfied this standard in evaluating the opinions of Dr. Kauss and Dr. Ross.

**E. Analysis**

The ALJ met both the clear and convincing and the substantial and legitimate reasons standards required to discount a treating or examining physician's opinion in relation to the opinions of Drs. Ross and Kauss. The ALJ found, "this was a period in which the [Plaintiff] was engaging in substantial gainful activity, which means even if she was not working at the time he made these determinations, she did return to work on a full time basis. Consequently, the fact the [Plaintiff] worked extensively during this period undermined" the opinions of these two doctors. (AR at 43 (error in original).) The ALJ further stated, "even if she actually had these limitations, her work record showed she did not and was not likely to have these limitations for a continuous 12-month period." (AR 43.)

The ALJ did not make reference to whether or not the opinions were those of treating or examining physicians. The parties also did not characterize these physicians' status in their Joint Stipulation. Nonetheless, Dr. Ross could clearly be considered a treating physician because he treated Plaintiff every week from December 2012 to August 2014. (AR 966-72.) Dr. Kauss could be considered at least an examining physician because he evaluated Plaintiff twice. (AR 1008-29.) The ALJ made no finding as to whether the opinions were contradicted or not contradicted by other physician opinions. Such a finding would determine whether the clear and convincing or substantial and legitimate reasons standard for rejecting treating and examining physician opinions should be applied. The ALJ did evaluate and assign weight to other physicians' opinions but did not rely on any of those opinions to reject the opinions of

17

Dr. Ross or Dr. Kauss. This Court can only rely on the reasons provided by the ALJ in support of his finding that the opinions of Dr. Ross and Dr. Kauss should be given little weight. *Id*.

The ALJ's finding that Plaintiff engaged in SGA from 2011 to 2015 is supported by substantial evidence in the record. Defendant argues that the Court should not reach this issue because Plaintiff did not contest it in her opening portion of the Joint Stipulation, citing to *Rudebusch v. Hughes*, 313 F.3d 506, 521 (9th Cir. 2002). (Joint Stip. at 20-21.) While Plaintiff did not expressly take issue with the ALJ's finding of SGA from 2011 to 2015 until her reply to Defendant's portion of the Joint Stipulation, Plaintiff did contest the ALJ's evaluation of the medical opinions of Dr. Kauss and Dr. Ross in her initial portion of the Joint Stipulation. Accordingly, the Court must review the ALJ's reasons for giving little weight to these two medical opinions to determine if the reasons are supported by substantial evidence in the record. *Orn*, 495 F.3d at 630.

The ALJ's reasons for rejecting these two opinions rested primarily on his finding that Plaintiff engaged in SGA from 2011 to 2015, and this work activity was inconsistent with the severity of the mental impairments outlined in the opinions of Drs. Kauss and Ross. (*See* AR 43-44.) Dr. Kauss provided an opinion on June 9, 2014. (AR 960-65.) Dr. Ross provided an opinion on August 25, 2014. (AR 966-72.) The ALJ noted that Dr. Kauss opined that "because of [Plaintiff's] mental impairment issues, she would be unable to meet competitive standards in multiple areas of mental functioning and would miss more than four days of work per month." (AR 43.) But the ALJ observed that the opinion was provided as a time when

> the claimant was engaging in substantial gainful activity, which means even if she was not working at the time he made these determinations, she did return to work on a full time basis. Consequently, the fact the [Plaintiff] worked

extensively during this period undermined the significant functional limitations he assessed. Finally, even if she actually had these limitations, her work record showed she did not and was not likely to have these limitations for a continuous 12-month period.

(*Id.*)

The ALJ found that Plaintiff had engaged in SGA before the Kauss and Ross opinions in 2014 and after these opinions. (AR 43.) Specifically, the ALJ found Plaintiff engaged in SGA from March 2011 to March 2015. (AR 34, 36.) Plaintiff alleged disability beginning on March 25, 2011. (AR 83.) The record reflects that Plaintiff continued to work after the alleged onset date with modifications, but the modifications did not help and she stopped working on October 5, 2011. (AR 238, 272.) Plaintiff's testimony at the ALJ hearing was that she only worked from December 2014 to March 2015, a four month period. (AR 58.)

Plaintiff's earnings records show that Plaintiff had no earnings in 2012, but she had significant earnings in 2013. (AR 210, 221.) It also shows significant earnings in 2014 and 2015. (AR 217-22.) Plaintiff states her earnings from 2013 were worker's compensation payments. (Joint Stip. at 24 n.9.) Plaintiff provides no explanation for her earnings during the four month period between December 2014 and March 2015, but testified at the hearing that she worked full-time during this period. (AR 58.)

As Defendant points out, Plaintiff does not dispute that she performed substantial gainful activity during the time she claimed disability. (Joint Stip. 22.) Indeed, Plaintiff testified that she worked full-time December 2014 through March 2015, working a 9/80 schedule. (AR 58.) Rather, Plaintiff argues that the short four month work period was an "attempt to return to work" that does not undermine the opinions of Drs. Kauss and Ross regarding the severity of her mental impairments. (Joint Stip. at 18.) Plaintiff also argues she is entitled to a trial work period to see if she was able to return to work. (Joint Stip. at 18.)

Defendant argues Plaintiff is not entitled to a trial work period because she had not been found to be disabled yet. (Joint Stip. at 22.) Defendant is correct that this was not a statutory trial work period because there was no prior finding of disability (*see* 20 C.F.R. 416.922).

Accordingly, the ALJ's reliance on Plaintiff's record of SGA during the application period is both a clear and convincing and a specific and legitimate reason to discount the opinions of Dr. Ross and Dr. Kauss that the severity of Plaintiff's mental impairments prevented her from working. Because the ALJ's reasons are supported by substantial evidence in the record, the Court finds the ALJ's evaluation of the opinions of Dr. Ross and Dr. Kauss is free of legal error and must be affirmed.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 7, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE